FILED
 2021 Mar-22 AM 08:28
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| REBECCA LUCILE CORBELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: 7:19-cv-01951-JHE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Rebecca Lucile Corbell ("Corbell") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Corbell timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Corbell filed her applications for a period of disability and DIB on April 20, 2016, alleging she became unable to work beginning January 27, 2016. (Tr. 29, 165-67). The Agency initially denied these claims on October 21, 2016. (Tr. 29, 101). Thereafter, Corbell filed a written request for a hearing (tr. 29, 108-09), and on August 29, 2018, Corbell appeared via video conference and testified at a hearing (tr. 29, 54-82). On November 5, 2018, the ALJ issued an unfavorable decision and denied Corbell's claims. (Tr. 26-39). Corbell sought review by the Appeals Council,

but it declined her request on October 22, 2019. (Tr. 1-10). On that date, the ALJ's decision became the final decision of the Commissioner. On December 2, 2019, Corbell initiated this action. (*See* doc. 1).

Corbell alleges she became disabled on January 27, 2016. (Tr. 167). She was forty-nine years old on June 30, 2016, her date of last insured. (Tr. 38, 167). Corbell initially alleged disability based on Raynaud's disease, bladder infection, sepsis, and kidney failure. (Tr. 184). She has at least a high school education, having completed at least four years of college (tr. 38, 185), and past relevant work as a Case Aid and a Home Health Aid. (Tr. 38, 79).

## II. Standard of Review[1]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the

---

[1] In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[2] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)  whether the claimant is currently employed;
(2)  whether the claimant has a severe impairment;
(3)  whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)  whether the claimant can perform his or her past work; and

---

[2]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

> (5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Corbell last met the insured status requirements of the Social Security Act on June 30, 2016, and that Corbell had not engaged in substantial gainful activity during the period from her alleged onset date of disability, January 27, 2016, through her date of last insured, June 30, 2016. (Tr. 31). At Step Two, the ALJ found Corbell had the following severe impairments: acute kidney injury and Raynaud's syndrome. (Tr. 31-34). At Step Three, the ALJ found Corbell did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 34).

Before proceeding to Step Four, the ALJ determined Corbell's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that Corbell had the RFC to perform light work as defined

in 20 C.F.R. 404.1567(b) with certain non-exertional limitations. (Tr. 34-37) Specifically, the ALJ found Corbell could perform light work except lifting 20 pounds occasionally and 10 pounds frequently; sitting for six hours, standing for six hours; and walking for six hours; and pushing and pulling as much as she could lift and carry. She could climb ramps and stairs occasionally, but never climb ladders, ropes, or scaffolding. She could balance, stoop, kneel, crouch, and crawl occasionally. She could never work at unprotected heights. She could occasionally work in humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold, and extreme heat. She could frequently finger, feel, and handle. (*Id.*).

At Step Four, the ALJ determined that, through the date last insured, Corbell was capable of performing her past relevant work as a case aid as it was actually and generally performed. (Tr. 37-39). Furthermore, after hearing additional testimony from the vocational expert, the ALJ made an alternative Step Five finding that Corbell could perform other work existing in the national economy. (Tr. 38-39, 80). Therefore, the ALJ determined Corbell had not been under a disability and denied her claim. (Tr. 39).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Corbell challenges the Commissioner's decision contending the ALJ committed error by

5

failing to properly consider her subjective complaints, which she asserts were supported by objective medical evidence. (Doc. 8 at 8-15). The Commissioner disagrees, arguing there is substantial evidence to support the decision that Corbell failed to prove she was disabled. (Doc. 9 at 6-14).

### A. Corbell's Use of Her Hands and Feet Due to Raynaud's Syndrome

As claimant, Corbell has the burden of proving she is disabled. *See* 20 C.F.R. 404.1512(c). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[,] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Corbell contends she is "disabled" and that the ALJ improperly applied the Eleventh Circuit pain standard by ignoring medical evidence that supports her allegations of limitations on the use of her hands and feet due to her Raynaud's syndrome. (Doc. 8 at 10-11). The subjective complaints determination is within the province of the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). When a claimant attempts to establish disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of the alleged symptoms or that the medical condition could be reasonably expected to give rise to the alleged symptoms. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. 404.1529; *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). If the claimant establishes that she has an impairment that could reasonably be expected to produce her alleged symptoms, then the intensity and persistence of her alleged symptoms and their effect on her ability to work must be evaluated. *See* 20 C.F.R. 404.1529(c)(1); *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). When evaluating a claimant's statements regarding the intensity, persistence, or

limiting effects of her symptoms, the ALJ may consider the objective medical evidence, the effectiveness of medication, a claimant's method of treatment, what measures a claimant takes to relieve symptoms, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. 404.1529(c)(2)(3), (4); SSR 16-3p, 2017 WL 5180304 at *5-8. A claimant's subjective pain testimony supported by objective medical evidence that satisfies the pain standard is sufficient to support a finding of disability. *See Foote*, 67 F.3d at 1561.

Corbell states that she has provided objective evidence of an underlying medical impairment, namely Raynaud's syndrome, that could reasonably be expected to cause the symptoms she claims. (Doc. 8 at 11). Specifically, Corbell contends she "consistently expressed complaints of severe pain and her hands turning blue and problems handling objects and walking due to Raynaud's syndrome at numerous visits to treating physician, Dr. Richard Jones, M.D., and, his office records make reference to these problems frequently. (*Id.*). She also points to her hearing testimony that her hands turn blue on a daily basis and that she wears gloves when this occurs and stated that she cannot pick up things with her fingertips when they are blue. (*Id.* (citing tr. 70)). She points to further testimony that she cannot grip a coffee cup or open a doorknob when her hands are not working or are purple. (*Id*. (citing tr. 67)).

Corbell summarizes several of Dr. Jones's treatment notes dating back to 2010. (*See* doc. 8 at 13-14). However, her alleged onset date of disability is January 27, 2016. (*See* tr. 31). Thus, the ALJ's task was to determine whether she was disabled during the relevant period of January 27, 2016 through the date last insured, June 30, 2016. (*Id.*). The only treatment note Corbell points to from this period is from May 10, 2016, where Dr. Jones observes "The patients still has discoloration in her hands, especially when the temperature fluctuates." (Doc. 8 at 13-14 (citing

tr. 673-75). His exam reveals "she is positive for numbness in extremity and blue discoloration of both hands and feet." (*Id.*). Corbell asserts "this evidence contradicts the ALJ's finding that the claimant's Raynaud's syndrome does not cause her any problems not covered by the residual functional capacity she relied on in forming her decision and her statement that Dr. Jones cited no disabling effects from Raynaud's syndrome." (Doc. 8 at 14).

Contrary to Corbell's assertion, the ALJ's evaluation of her subjective complaints complied with the Eleventh Circuit pain standard and the regulatory criteria outlined in SSR 16-3p. (*See* tr. 34-37). In making her findings, the ALJ stated she considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and SSR 16-2p." (Tr. 34). The ALJ found that while she agreed that Corbell's impairments could reasonably be expected to cause the alleged symptoms, Corbell's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision. (Tr. 36). As outlined below, substantial evidence supports the ALJ's finding.

As the Commissioner outlines in his brief, the ALJ's decision contains five specific reasons to support her finding that the medical records and other evidence do not indicate Corbell's condition was as limited as she alleged. (Tr. 34-37). First, the ALJ noted that Dr. Jones did not opine that Corbell had any work-related limitations during the relevant period (*id.*), and Corbell does not point to any in her brief (doc. 8). *See Packer v. Comm'r Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013). Additionally, the ALJ noted that Dr. Jones prescribed exercise for Corbell at her May 10, 2016 appointment, which also appears to be inconsistent with disabling limitations. (Tr. 36, 675-76). Second, the ALJ recognized that in his May 10, 2016 treatment

notes, Dr. Jones indicated that Corbell reported doing well on Plaquenil[3] and Pletal[4]. (Tr. 36, 672). Third, the ALJ noted that treatment records show normal functioning of extremities and normal use, deep tendon reflexes, tone, and strength. (Tr. 37, 91, 298, 332, 350, 426, 438, 546, 450, 452). Fourth, the ALJ noted Corbell reported being able to perform activities of daily living (tr. 35, 68), and simple crafts that required the use of her hands (tr. 25, 69, 72). Finally, the ALJ gave great weight to the opinion of state agency expert Richard Whitney, M.D., who stated the rheumatology records indicate normal functioning of the extremities and that she could perform a range of light work. (Tr. 91).

Corbell does not address these findings and, as far as objective evidence, only points to some of the May 10, 2016 examination findings, which the ALJ acknowledged. (Tr. 36). The ALJ made specific findings of fact in support of her decision, and these findings are supported by substantial evidence. Corbell has not met her burden to show otherwise.

**B.  Corbell Does Not Sufficiently Raise Any Other Issues**

It is axiomatic that issues not challenged on appeal are deemed abandoned. *United States v. Valladares*, 544 F.3d 1257, 1267 (11th Cir. 2008). Furthermore, issues not clearly raised in the parties' briefs are considered abandoned. *Marek v. Singletary*, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995).

In her brief Corbell states "the ALJ failed to give proper credit to Corbell's testimony in this case *and the Appeals Council failed to review the opinions of the claimant's treating medical sources in the letter of December 10, 2018*." (Doc. 8 at 14) (emphasis added). Corbell provides

---

[3] Plaquenil (hydroxychloroquine) is used to treat or prevent malaria, but is also used to treat symptoms of rheumatoid arthritis and discoid or systemic lupus erythematosus. *See* https://www.drugs.com/plaquenil.html.

[4] Pletal (cilostazol) is used to reduce symptoms of intermittent claudication, which is pain caused by too little blood flow. *See* https://www.drugs.com/pro/pletal.html.

no analysis for this contention.  However, earlier in her brief she describes the December 10, 2018 letter from Melissa Harrison, CRNP, who is with the Center for Rheumatic Diseases, where Corbell receives treatment for her Raynaud's syndrome and arthritis.  (Doc. 8 at 11-12).  While it appears Corbell failed to develop this argument and therefore did not properly raise it on appeal, the undersigned will address it out of an abundance of caution.

Corbell submitted additional evidence to the Appeals Council, including this December 10, 2018 letter from CRNP Harrison.  (Tr. 24).  The Appeals Council reviewed the evidence, specifically noting this letter, and found CRNP's letter (and other evidence) did not relate to the period of time at issue in the case.  (Tr. 2).  While Corbell could have challenged that finding on appeal, she has not done so.  (*See* doc. 8).

## VI. Conclusion

Based on the foregoing, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Corbell's claims for a period of disability and disability insurance benefits is **AFFIRMED**.  A separate order will be entered.

DONE this 22nd day of March, 2021.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE